Good morning and may it please the court. Thomas Maher on behalf of Maurice Bailey, the appellant in this case. Mr. Bailey was prosecuted based on drugs that were found when Officer Page executed two arrest warrants that he had promised not to execute when Mr. Bailey turned over voluntarily some drugs during the investigation. The history of the litigation is that Mr. Bailey began with a motion to suppress based on an alleged Fourth Amendment violation because Officer Page had entered Mr. Bailey's residence without permission. During the hearing it became clear that Officer Page had promised Mr. Bailey that if he turned over drugs that were in the residence that no action would be taken based on those drugs. Where is that clear in the record? It's not clear to me that there was any agreement here at all. The agreement is not as clear as one would hope but on page three of my brief and it's from the Joint Appendix 7374 there's a transcript of what actually happened. This was all recorded. Right and since it was recorded why don't we have the recording in the record? I think because we have the transcript of the language of what was said to the extent the court wanted to actually see the recording obviously you can see that but what you have is the transcript of what was said by the officer. District Court clearly in hearing it believed that there was a promise being made. Did the district court make a determination that there was an agreement? District Court ultimately decided that because probable cause existed for the arrest for a .1 gram transaction. Okay so my question was did the district court make a determination that there actually was an agreement? I don't know that the district court's order specifically said there was an agreement. What the district court found was that because there was probable cause before any statements made by Officer Page that there was a basis for those arrest warrants regardless of any agreement there was no violation. The district court had raised the issue. And you can see that there was probable cause? There was probable cause yes I think there was of course the value of the agreement had there been no probable cause there wouldn't be an issue of whether there was an agreement because he wouldn't have been arrested anyway. The value of the agreement was by turning the drugs over he was not going to be arrested something that he could otherwise have been arrested. And you know what Officer Page had said was and it's on page three of my brief was listen to me I'm going to say this one time only one time okay whatever a little bit of shit-crack you've got left in the house put it in that chair I'm going to take it and I'm going to leave and the same thing as last everything is still squared away and we'll talk. And following that statement Mr. Bailey and Mr. Page entered the residence and recovered 0.7 grams of cocaine and Officer Page left at that point but subsequently got an arrest warrant both for that amount. And he says we'll put something together and that's my word man to man and as soon as I get back to the PD I'll call my people that can hook that can hook people up with drugs and we'll find something. That's all sound. What is the agreement? The agreement and I should probably start with the prior incident because he does say he references the same as last. What had happened previously and this is set out in the brief in the hearing the Officer Page had previously found some cocaine in Bailey's residence that his girlfriend claimed and Mr. Bailey offered to cooperate basically a credit for his girlfriend and that was the existing relationship between Officer Page and Mr. Bailey so the reference was to this prior agreement that Mr. Bailey would cooperate and get credit for his girlfriend. And in his testimony during the hearing on this Officer Page agreed that he was basically agreeing not to prosecute Mr. Bailey not to arrest Mr. Bailey both for the 0.7 grams that came out of the residence and the 0.1 gram that was recovered from Daniel Johnson earlier in the day. What he claimed was the agreement included requirement of further cooperation and that Mr. Bailey didn't provide that cooperation. The district court did not resolve that issue. That certainly doesn't seem to be anywhere in the record does it? Further cooperation? Other than going in the house and getting the crack that he had in the house. What's in the record is Officer Page testified that he later met with Mr. Bailey told him people he was interested in he believed Mr. Bailey didn't provide the required cooperation he did testify Mr. Bailey provided. That's later. Well how can what he later make the agreement at the time? Correct. The only reference that would support a requirement of during the discussion that was reported was a reference to same as last time and that had been Officer Page had described that as an agreement that Mr. Bailey would cooperate in order to aid his girlfriend who was facing a charge. But the agreement is less than clear obviously as we point out in the brief the extent there's any ambiguity in the agreement it is held against the government. Here the understanding was clear that he wasn't going to be taking the drugs he was turning over and that Officer Page would take the drugs and leave. And then he ultimately was arrested and that arrest led to discovery of the drugs for which he was being prosecuted in federal court. The problem is that you have to add so much to this to make it an agreement. For example, I won't arrest you. That's not in there. Well I think and it is ambiguous and this is of course a discussion taking place on the porch of Mr. Bailey's residence not with lawyers but with the police officer Mr. Bailey. But he says I'm going to leave. I'm going to take it. I'm going to leave and the same thing left everything is still squared away. It was clear both to Officer Page and to Mr. Bailey that he wasn't going to be charged with those drugs that he turned them over. Is that something that was clear to the officer testifying it was clear that he wasn't going to be arrested? Right. He said the reason he ultimately arrested him was because he didn't provide further cooperation that had he provided what the officer later required it's further cooperation he never would have been arrested. So the whole point of this was okay if you turn this stuff over I'm not going to arrest you for this very small amount of crack and we will continue our relationship. So when you read I won't arrest you so you read in the condition that in there too. In terms of the cooperation? Right. Officer Page testified that that was his understanding. But you accept that as a condition? I accept that there was some expectation of some cooperation the problem was what cooperation was required was never spelled out and the reason I accept that was where he says and the same thing is last and he testifies that this was a continuing relationship that there have been a to determine whether or not it was sufficient cooperation. That was left totally at this point undisclosed and that's why that would be held against. It didn't left to the officer normally. Page apparently believed it was totally up to him to decide later as to what cooperation was sufficient and as I've argued that the extent there's an ambiguity there's clearly an ambiguity here that should be held against the government not against Mr. Bailey. Mr. Bailey said let's sit down and negotiate exactly what you're expecting here. He said okay you say if I turn these drugs over you're gonna take them and leave and we're all squared away and then he ends up being arrested. What if there wasn't an agreement? Where what does that do to appellant's position? Well your honor clearly Mr. Bailey believed that he was relying on some promise and maybe promise is a better word than agreement in terms of the mind but clearly he was relying on Officer Page told him in turning these drugs over and Officer Page said bring them out put them on the chair I'm gonna take them I'm gonna leave and we'll be squared away. That is a statement that clearly implies that if you turn over these drugs which you would otherwise have you know Fourth Amendment or Fifth Amendment right not to do that you're not going to be arrested. I don't think anybody in Mr. Bailey's position would understand that. Well he was a he was arrested for two separate offenses one that one and the one that occurred beforehand the distribution offense which earlier that no promise made beforehand as to that offense. Well actually you're absolutely right. There were two warrants. One was for the drugs found in Mr. Manley Johnson's car after it left Mr. Bailey's residence and one was for the drugs found in the residence. Officer Page testified and we've discussed it in the brief that his statement was meant to cover both of them so that when Mr. Bailey brought out the drugs that was meant to cover everything that happened that day and the fact that there was probable cause for that earlier arrest doesn't justify violating this promise. As I said if there was no probable cause we'd be here on a very different issue. The whole point well if there was no agreement then you can see there was probable cause and your client would not have an argument. Well I would not concede that there's no promise made by Officer Page. I don't know you could read this and not understand Officer Page was making some kind of promise to Mr. Bailey and that promise was if you provide the drugs are in the house. You can see there was probable cause before the agreement. Certainly for the for the arrest for the before Officer Page made this statement. So we're only here because of the alleged agreement. If there was no alleged agreement then there was probable cause and you don't have an argument. Yeah well and agreement may suggest you know kind of a contract me in the minds there was clearly in our position a promise made by Officer Page and Bailey relied on. If this is not understood to be a promise then obviously we looped but I don't think it is reasonable and certainly the district court never determined one way or the other whether this was a promise and did not anything did not determine the scope of what was expected in the promise because it found that there was probable cause existed before what Officer Page said and therefore it didn't have in our position as well he relied on the agreement is the whole the probable cause is the whole reason for the alleged agreement. Correct. Mr. Maher are you making a distinction between cases where prosecutor grants immunity and in this case it seems like you're focusing on the arrest powers of the police. The prosecution in its brief the FLE sites to our cases involving equitable immunity and sets out the test with respect to equity equitable immunity which and one of the prongs is that that immunity extends only to the cases in which the defendant actually assists or aids in the that here do we? This case actually I will say this case in some respects is unique we're not moving for example to dismiss charges brought for the distribution to Manly Johnson or the drugs found in the house. The problem here is an officer in our view promised not to arrest him and then arrested him and the officer has the authority to make that promise he could not promise not to prosecute Mr. Bailey that would be strictly up to the district attorney but as a law enforcement officer in North Carolina he can say I'm not going to arrest you for that and when he violated that promise that led to discovery of these drugs in our positions he should be put back in the position he would be in had the officer not arrested him. This is not a charge based on the 0.7 grams it's actually based on other drugs. But isn't that in effect sort of allowing the police officer to bind the prosecutor? Only as to whether that officer is going to execute an arrest. A DA on his own could decide to bring charges but the officer in under North Carolina law has the authority to make a determination as to arrest actually only needs the district attorney's input in the very limited type of cases involving school employees. So this is not a a case where the officer said I'm not going to indict you as a habitual felon which is not something an officer can promise. This is a case where the officer says I'm not going to take action and that's action the officer had the authority the promise not to take. And we are not here seeking to dismiss a district attorney's decision to bring a case that the officer didn't have the authority to promise. It is to enforce the promise not to arrest. Unless there are any further questions I will reserve my remaining time. Thank you. May it please the court. My name is Craig Principan. I'm representing the United States of America, the Appellee, in this appeal. On by two North Carolina Annapolis Police Department officers, Officer Snyder and Officer Franklin. Incident to that lawful arrest, 17.8 grams of cocaine base or crack cocaine was seized from Mr. Bailey's pocket. That 17.8 grams formed the basis of the federal government's prosecution of the defendant in this case as he was indicted in a one-count indictment alleging possession with 2019 the date of his arrest. Mr. Bailey's arrest was lawful and was based upon two North Carolina arrest warrants alleging violations of North Carolina law that were drawn by police officer and at the time vice and narcotics investigator page also with the Annapolis Police Department. The first of those warrants government's exhibit to at the suppression hearing was a warrant that addressed the zero officer page made an agreement with appellant what officer page did is he gave him an opportunity to provide assistance in the future so he did not make agreement no not at that time he was providing him an opportunity to provide substantial assistance in the future so what he was offering him was an opportunity and under contract principles he would have to accept by substantial performance which he never did and in fact there was the quid pro quo what would he get I'm sorry what would he get mr. Bailey yeah well he would get the possibility that he either might not be prosecuted for those charges or that he would get a favorable recommendation with the district attorney's office the officer cannot so especially under North Carolina law especially under North Carolina law and the case cited by the government state be Sturgill the North Carolina Court of Appeals essentially made that finding that under North Carolina law in particular the North Carolina Constitution the power to make prosecutions and prosecutorial decisions is vested in the office of the district attorney and in that case a police officer had made a promise during an interview to a defendant that he would not seek to prosecute him as a habitual felon if he helped with the recovery and providing information about some break-in entering crimes and recovery of the property from those crimes and what the the court ultimately held was that the officer had no legal authority under the law to bind the prosecutorial decisions of the district court however the Sturgill court did find that the defendants due process rights were implicated based upon this officers unauthorized promise but what they ultimately decided is that to resolve the issue of due process in that case yes it was I'm sorry in our case yeah in in your case in this case did it what if anything did the district court say about the alleged agreement or promise yes your honor the court didn't explicitly put it in terms of contract terms but what the district court did do is make several factual findings that suggest that the court viewed this as an offer for the defendant to perform which he never did so for example the district judge said that the three went back onto the porch Paige said he would take the crack and as soon as he got back to the station he would call his people about a CDL job and that everything was still square between them but Bailey would have to get straight on this at some point and make it right so that's a forward-looking statement about what he is expected to do then the district court found that page sent Bailey some information about jobs but Bailey provided no helpful information or assistance about the drug trade so clearly the court who first identified this issue made these findings in his findings and conclusions that are indicative that the defendant didn't perform and breach if there was an agreement or a forward-thinking promise or whatever how does that impact the probable cause sure well your honor is the district court correctly found the police investigator page in the Kannapolis Police Department had developed independent probable cause to support the arrest warrant for the sale of .0 so first of all the officer had seen Manley Johnson leaving the Waco Avenue residence was mr. Bailey's residence he knew that mr. Johnson's license was suspended he stopped mr. Johnson's car there was a canine hit on the car they searched the vehicle and found two crack rocks weighing 0.1 grams in the floorboard he then texted mr. Bailey and said I need to talk to you police officer page because mr. Bailey given him his phone number during the August 30th 2019 incident in which his girlfriend Mecca Barbara was arrested for possessing a separate amount of crack cocaine at the same residence so he texted mr. Bailey went back to the Waco Avenue residence spoke with mr. Bailey on the porch and before any offer of any kind of leniency was made and this was found by the district court in quite a significant amount of detail the defendant made incriminating statements to investigator page that confirmed that he had sold that those crack rocks incriminating statements that confirmed he sold that one moment your honor I'm paid so far there's no probable cause he just came out of his friend's house so far there's no probable cause well then he came out then Johnson came you're on the government contend that there would still be probable cause but it let me first address your first question which is what did the district court find because I think you found in significant detail that in a non custodial voluntary conversation mr. Bailey acknowledged selling the crack to Manley Johnson known to him as Jimmy and asked page you saw what kind it was page responded shit crack and Bailey said yes where's the where did it where in the I mean he acknowledged that that Johnson had shit crack but where did he acknowledge that he sold it to him yeah well it was in the conversation that was recorded on officer's body camera which is government's exhibit for that was introduced in the suppression well the district court judge made findings about that what did he say I guess I sold it to him what your honor the district judge recounted what was said in just what you just said yes that he well what the officer testified to at the hearing was that was that he confronted him about Manley Johnson just leaving his house so the context of the entire interaction was indicative of him making it admission and that's what the court found and and the body-worn camera is part of the record on appeal even if it was not made part of the joint appendix and there was an agreement or a promise how did the probable cause negate the agreement of promise it seems like the probable cause was the reason for the agreement or promise sure but it predated any any promise made by the defendant in which he definitely relied on an unauthorized police promise in turning over additional incriminating evidence to the police and that's the only thing that would make this any kind of due process issue is when a defendant relies reasonably but to his detriment in turning over either a confession or evidence to the police based upon some type of offer statement or promise and that's really the only issue that if at all he's entitled to is the remedy of suppression of that 0.7 grams of crack cocaine that was turned over from the Waco Avenue residents really counsel because what he's saying is this that you're right based on what the district court found in terms of the 0.7 was already established but what's officer was that all right we got this points one with Johnson but then why don't you just give me everything you got in the house and they'll all this would be all of this will be taken care of and be squared away all referencing the point one and the 0.7 and ultimately he came up with this supposedly the residual what he added that's what he's saying is that it may be it's not a the promise they said that the officer incorporated this pre-existing probable cause points one gram into the agreements and it's all squared away we'll take care of that and then later talked about where you got to work for that I need something you need to cooperate and there's a question of how much cooperation is there but they're not that they're saying that that was it was all swept it both was swept together yeah sure I appreciate your question and I think this is really where the details and the specifics of what was actually said really matter so I'd like to point the court to several parts of the joint appendix that supports the government's position that there was never a promise not to arrest him there was never a promise that everything would be all square if you just got the drugs and turn them over that day what is squares even I'm sorry I could it mean so first of all what we said is everything is still squared away and we'll talk we'll put something together my question is what does that mean what is all squared away me right so I mean it's a series of statements that I think will answer the question you're on a series okay go ahead so in that statement he did not say we're all square so you brought the drugs out now we're all square that would mean it's done that's not what was said in order to say that everything would be squared away what did he what page said is that the same thing at its last and he was going to stay as it was and I was going to continue to try and let him provide information if he could and so this is referring back to the August 30th 2019 episode with Mecca Barbara when she was arrested but it doesn't mean what the defendant is arguing here on appeal because in defendant's brief he says that Mecca Barbara was not arrested and therefore the defendant should have believed that he was making a promise not to arrest him but that's not true page testified that Mecca Barbara was actually arrested on August 30th and that's when they exchanged phone numbers and mr. Bailey said can I try to provide information or cooperation to help her out with her charges so all he's saying here the meaning of same thing as last is just the status quo is still here I'm gonna let you to continue to cooperate you're not gonna be arrested today but he never says I'm not gonna arrest you ever and therefore the the court was correct in finding that even if there was an agreement or a promise and even if it was officer page and not mr. Bailey who breached that agree really the only detrimental reliance by mr. Bailey was turning over the point seven grams of crack cocaine from the house and even if you suppress that there was independent probable to call probable cause supporting mr. Bailey's arrest on November 13th for the other warrant government's exhibit to so then he's out there he happens to get arrested by two other canapolis police department officers and he's got 17.8 grams of crack cocaine on his person and that's the basis of the federal government's prosecution of mr. Bailey so just just so I understand your position but if the agreement had been clear that the officer intended as the chief indicated to bring all of this into this promise not to prosecute the defendant for future cooperation you'd have a what the officer actually said at the hearing with regard to that and because I think it's being described as if he says well we're just gonna pull everything together what he said was the defense attorney was asking investigator paid what his intention was behind the statements and he said his intention was to convey convey to mr. Bailey that if he complied with the request to go in and bring out the crack well I'm sorry the defense attorney asked him was it your intention to convey to him that if he went in and brought out the crack you would not charge him criminally with that offense and the officer said not on that day it was pages intention to allow him the opportunity to help himself out whether that would benefit him by giving him credit with the DA's office if he was charged or depending on the level of information he provided and could possibly be where he was not charged in the future so that's what the officer said the statement was about and and contextually everything supports that but it didn't include both of those both of those those the contraband both contraband if he had successfully cooperated in the mind of the officer it would include both contraband you have to conceive then it potentially yes the officer said that it could potentially include where you would not be charged but the promise the promise includes both the only thing we really argued about is whether or not it was sufficient compliance with the condition and the condition was cooperation but that doesn't mean just because there's a condition that mean it there's a wasn't a contract that included both I think it clearly concluded both because it's not the officer say okay I'm arrest you for this point one right here but we can work some out on this point seven you just gave he didn't say that what he said was listen before just like a lot before you helped out about your girlfriend last time how about yourself yeah I mean clearly he did the other one why would the officer have this ambiguous promise and furthermore in the officer's burden to clarify it's almost like you know a contract of adhesion or promise of adhesion he came up with it right there's no evidence that Bailey said hey can we work something out this is all the officer's words and then in court you say well he explains it all the way but I'm not sure that that's the way contracts promises work isn't not necessarily our but I would point out that he made that statement at the suppression hearing in response to the defense attorney's question that's not how he it's not the words he used with mr. Bailey at the time and if we're talking about this as a contract between two parties we have to say was there ever a meeting of the minds did they ever reach any kind of agreement what officer page also testified about is that they met or at least had a discussion one to two weeks after the conversation on the porch and that's when for the first time mr. Bailey said I can give some information on these drug targets and page the ice and narcotics investigators said yes that would be extremely beneficial in in helping you in your current situation so it doesn't really seem that there could have been any kind of clear statement about what would happen with the case his two cases and pulling the two things together that certainly not at least until there's some type of meeting of the minds with regard to what the agreements all about it is clear what it was all about came back away from that it was all about the officer wanted more information I mean that's not a mystery let's let's at least take on the stuff that's not a mystery you know we're getting away he wanted him to give more information about the drug trade he did right and that would include both the point one and the point seven if sufficient will you concede that yeah I think he held a little you could see that no you won't concede that if he had given him all this information about the drug trace okay let me go arrest you there for the point one but it was point seven goes well you really serious that's you that's you what you're trying to say is is what he explained was that depending on the level of cooperation that he ultimately produced his intention was to potentially have that resolve both is but yes based on his level his understanding what satisfactory cooperation is right I agree the officer okay he decides how high you jump I give you ten people I'm on 20 I give you 20 I'm on 30 right I it's it's illusory I guess from a contract standpoint somewhere but I mean when you bring these things in the police officer it instigated this and then you come away and the person gives you a drug and then you say it's no agreement at all is there any evidence that the defendant jumped at all that he performed not with regard to the information about the drug trade he did perform with respect to some a robbery suspect of some kind right that's right so there was a person who already had an outstanding arrest warrant it was not officer pages case it involved property crime and mr. Bailey contacted pages at this person's at my house and other police officers I'm sorry officer page went there and arrested that person on that arrest warrant as he's bound to do but as he explained is that's that was never the performance I was asking for and even under contract terms you'd have to say you know does that amount to and your honor I'd also you know limited time left I want to redirect the court back to another significant aspect of this which is that the police officer had no authority to bind the prosecutor's decision and so what the court did and I think somewhat elegant eloquently in terms of resolving this issue was to say I'm gonna assume everything in the benefit of the defendant with regard to the fact that I'm gonna assume there was a binding agreement I'm gonna assume that he detrimentally relied reasonably on officer's promise I'm gonna assume that he's entitled to the remedy of suppression and he gave the defendant the benefit of all that regardless of whether or not there's very strong evidence that the defendant breach and never performed but but the district court judge you know gave him all those benefits of assuming for the sake of argument and then said now what are we left with if we give him the remedy of suppression and suppress that point seven grams and what he found is that there's still independent probable cause to support this other warrant and he was entitled to arrest him once it all surrounded the probable cause in the reason for the agreement so what the defendant is entitled to under the law is suppression of evidence in which he gives over to law enforcement in detrimental reliance on an unauthorized police promise that's what this case is about and the district judge followed the law applied the law to the situation in this case and made a reasonable and could correct correct legal determination that if the defendant was entitled to anything under the law he was entitled to suppression of only the point seven grams and that officer page was entitled to draw those warrants and if he wanted to raise that as an offense in a proceeding I see my time is up your mercy we have to see well may I conclude yes I'm sorry I lost my train of thought your honor my question was just how does the probable cause for the sale the Johnson negate the agreement it is not I think the issue is not whether or not it negates the agreement the the issue is whether the agreement is at all the court found that I mean the factual findings of the court suggested there was breached by the defendant he assumes though for the sake of argument that he's entitled to the benefit of the remedy under the law because the remedy that applies is an unauthorized police promise he was not authorized he had no authority to make this promise and so when the remedy is applied and the court you're still left with with the authority to arrest him for this other crime but isn't that within the officers authority I mean you could you say he had no authority to promise mr. Morris point is that's what police officers do all the time decide who to arrest and not to arrest so a police officer does have the authority to decide whether to make an arrest or not in this case officer page deferred arresting him on that date he never said I promised not to arrest you for this and and how could the defendant detrimentally rely about walking around with 17.8 grams of crack cocaine in his pocket believing oh I could never be arrested for these prior crimes just because he said I'll give you a chance to provide some assistance to help you out of this situation it doesn't seem reasonable that he would rely detrimentally on a promise for that so really I think the court correctly resolved the issue I don't want to abuse the court's time I see my time is up let me just conclude the district court made sufficient findings of fact and conclusions of law with regard to this issue it determined that the defendant's arguments did not bear fruit much less fruit of the poisonous tree it denied the motion to suppress and we ask that this court affirm the judgment of the district thank you very briefly I think judge Diaz's question at the end really goes to the heart of this is what is this an authorized promise the remedy of simply suppressing the point seven grams relies on the reasoning of the state case Sturgill Sturgill what happened is a prosecutor brought an indictment in concert that was against a promise that a law enforcement officer had made and the court said well law enforcement can't promise that you won't be indicted as a felon so you're not going to get that promise enforced but we are gonna allow suppression of the evidence that was produced in the lines on this unauthorized promise we don't have a district attorney here who said you know what I'm going to prosecute mr. Bailey for the point seven grams or the point we have an officer who decided to arrest him that's clearly something that within his authorization to the extent there are questions about the meaning of some of these words the scope of the promise the government's claim that mr. Bailey somehow violated his part of the promise none of that was resolved by the district court the district court very simply said I can assume that there was an agreement here and it doesn't matter because there was probable cause for the promise incorporated the point one grams that matters very much that there's an agreement and that the district court erred and denied the motion on that basis it may well be that this needs to be remanded to the district court to determine some issues about exactly what was meant and whether mr. Bailey in fact provided the required cooperation but the existence of probable cause for the point one grams found for mr. Johnson does not answer the issues that have been raised in this case there are no further questions I think it's my I know that you're a court opponent yes and on behalf of the Fourth Circuit I want to thank you so much we rely upon lawyers like yourself to take these cases and must appreciate I want I could also acknowledge your representation with that we'll ask the clerk to adjourn the court Senate I will come down three counts before stand adjourned signed I God save the United States and this honorable court
judges: Roger L. Gregory, Albert Diaz, Stephanie D. Thacker